# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **METROPOLITAN ST. LOUIS EQUAL HOUSING & OPPORTUNITY COUNCIL,** | )<br>)<br>) |
| Plaintiff, | ) Case No.: 4:13-CV-00481-HEA<br>) |
| vs. | )<br>) |
| **NORMAN L. JEZEWAK and SIGNATURE PROPERTY, LLC,** | )<br>)<br>) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT

COME NOW, Defendants Norman L. Jezewak ("Jezewak") and Signature Property, LLC. ("Signature"), by and through their undersigned counsel, and for their Motion to Dismiss or, alternatively, Motion for More Definite Statement pursuant to Fed. R. Civ. P. 12(b)(6) and 12(e), state as follows:

### I. Introduction

In the case at hand, the Metropolitan St. Louis Equal Housing and Opportunity Council ("EHOC") alleges that Jezewak and Signature engaged in discriminatory housing practices by denying "testers" employed by EHOC access to housing based on the testers' alleged familial status and race. EHOC – which brought this case on its own behalf (as opposed to being brought by the testers themselves, or by a governmental entity charged with enforcing public housing laws) – has failed to allege that it has sustained an injury-in-fact as a direct result of Jezewak and Signature's allegedly discriminatory conduct.

In its July 29, 2014 Opinion, Memorandum and Order, this Court granted Defendants' Motion to Dismiss EHOC's Original Complaint based on lack of standing because EHOC had failed to allege that it suffered an injury-in-fact. *Doc. 31*. This Court granted EHOC leave to file an Amended Complaint to set forth allegations which may allege an injury-in-fact. *Id.* A review of EHOC's First Amended Complaint, however, reveals that, once again, EHOC has failed to allege an injury-in-fact, and therefore, the First Amended Complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

Alternatively, Defendants request that if this Court believes that EHOC's allegations plausibly set forth an injury-in-fact, that it grant Defendants' Motion for More Definite Statement pursuant to FED. R. CIV. P. 12(e) given that, as pled, the allegations in the First Amended Complaint are so vague and ambiguous that Defendants cannot reasonably prepare a response to it.

## II. The Fair Housing Act and the EHOC's Allegations of Discrimination and Damages

The Fair Housing Act ("FHA") prohibits discrimination against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, national origin, or disability. *See* 42 U.S.C. § 3604. With respect enforcement by private persons, the FHA provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice…to obtain appropriate relief with respect to such discriminatory housing practice or breach." 42 U.S.C. § 3613(a)(1)(A). An aggrieved person includes

any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i).

### III. Generally Applicable Legal Standards

A defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead facts from which the court can draw a "reasonable inference" of liability. *Iqbal*, 556 U.S. at 678. The complaint need not contain "detailed factual allegations" but must contain more than mere "labels and conclusions, and a formulaic recitation of the elements" or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *Id*. at 679, which "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss, the court can "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Turning to any "wellpleaded factual allegations," the court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. The court may only consider the initial pleadings. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 799 (8th Cir. 2011).

FED. R. CIV. P. 12(e) allows for a motion for more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." *Id.* A motion for more definite statement should be granted "in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading to the pleading in question." FED. R. CIV. P. 12(e) advisory committee note. The moving party must "point out the defects complained of and the details desired." FED. R. CIV. P. 12(e). Granting a more definite statement is at the discretion of the Court.

### IV. Legal Standards for Standing in Housing Discrimination Cases Based on Testing by Non-profit Organizations

Article III of the Constitution limits the scope of the Federal judicial power to the adjudication of "cases" or "controversies." U.S. Const. art. III, § 2. The plaintiff bears the burden of meeting the "irreducible constitutional minimum" of Article III standing by establishing three elements: First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations, alterations, and citations omitted).

As the Supreme Court noted in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982), Congress has essentially dispensed with the prudential standing limits in

the context of an action under the FHA.  In the wake of *Havens*, Courts have recognized that the sole requirement for a fair housing organization to have standing to sue in its own right under the FHA is the Article III standard of an injury-in-fact. *See Arkansas ACORN Fair Housing, Inc. v. Greystone Development*, 160 F.3d 433, 434 (8th Cir. 1998) (citing *Havens*, 455 U.S. at 372).  An injury-in-fact is "an invasion of a legally protected interest which is (a) **concrete and particularized**, and (b) **actual or imminent**, not conjectural or hypothetical."  *Oti Kaga, Inc. v. South Dakota Housing Development Authority*, 342 F.3d 871, 878 (8th Cir. 2003) (emphasis added, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

> **V.    The Allegations in EHOC's First Amended Complaint**

In its First Amended Complaint, the EHOC states that:

- Its "mission is to ensure equal access to housing for all people through education, counseling, **investigation, and enforcement**."  Plaintiff's First Amended Complaint, ¶¶ 4, 7 (emphasis added).
- It "**[i]nvestig[ates] housing providers** and other entities covered by the Fair Housing Act and similar laws **to ensure their compliance**."  Plaintiff's First Amended Complaint, ¶ 8(d) (emphasis added).
- "**Testing is a tool used by fair housing agencies** to measure the quality, quantity, and content of information and customer service given to potential renters and/or home buyers by housing providers based on protected class." Plaintiff's First Amended Complaint, ¶ 9 (emphasis added).
- "A matched pair test is an investigation using testers to compare the treatment afforded by housing providers to different types of prospective renters. **Testers are persons who, without the intent to rent an apartment or buy a house**, pose as prospective buyers or renters of real estate for the purpose of gathering information. In matched pair tests, two similarly-situated testers – one of whom is a member of a protected class and the other of whom is not – test the same property. The information gathered by the tester is then assessed to determine whether there is any indication that a housing provider may be in violation of fair housing laws."  Plaintiff's First Amended Complaint, ¶ 10 (emphasis added).
- "EHOC conducted a matched pair test for **familial status** discrimination at 5847 Sunshine Drive on June 6-8, 2011. EHOC's testing coordinator determined that the results of the June 6-8, 2011 matched pair test indicated that Defendants may be discriminating on the basis of familial status, **as well as race and/or color.**" Plaintiff's First Amended Complaint, ¶ 11 (emphasis added).

- **"Based on the results of this test**, EHOC's testing coordinator conducted a **second matched pair test for familial status discrimination** on September 20, 2011, and **a separate matched pair test for race discrimination** on July 7-12, 2011." Plaintiff's First Amended Complaint, ¶ 12 (emphasis added).
- "Each act of discrimination conducted in the Metropolitan St. Louis area causes a setback to the good work accomplished by EHOC's educational, counseling, and outreach efforts and the development of an integrated housing community. As a result, **EHOC must launch further efforts to undo the damage that the discrimination has caused. These further efforts required are a substantial drain on EHOC's resources and cause harm to EHOC**." Plaintiff's First Amended Complaint, ¶ 15 (emphasis added).
- "As a result of the conduct of the Defendants, persons were injured in their person and property. **Specifically, families with children and persons of minority races and color were not provided equal housing opportunity in violation of the Fair Housing Act.** Further, EHOC is **now forced to divert funds** to counteract the discriminatory message and acts of Defendants and has had its purpose frustrated by Defendants' discriminatory conduct." Plaintiff's First Amended Complaint, ¶ 16 (emphasis added).
- "EHOC's mission and purpose have been frustrated by Defendants' discriminatory practices. **As a result of the time spent by EHOC conducting the initial and follow-up tests on Defendants property, EHOC's time and resources were diverted from its fair housing counseling, training, outreach, and other activities and services.**" Plaintiff's First Amended Complaint, ¶ 17 (emphasis added).

### VI. The Frustration of EHOC's Purpose by Defendants' Allegedly Discriminatory Conduct Does Not Satisfy Article III's Requirement of a Concrete, Particular, and Non-Conjectural Injury-in-Fact, But Rather is Nothing More Than a Mere Setback to EHOC's Abstract Social Interests

An injury-in-fact is "an invasion of a legally protected interest which is (a) **concrete and particularized**, and (b) actual or imminent, **not conjectural** or hypothetical." *Oti Kaga, Inc. v. South Dakota Housing Development Authority*, 342 F.3d 871, 878 (8th Cir. 2003) (emphasis added, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The issue, therefore, is whether frustration of purpose is a concrete, particular, and non-conjectural injury-in-fact.

This Court previously dismissed EHOC's Complaint to the extent EHOC attempted to rely on "frustration of purpose" as an element of damage. As stated above, though, EHOC once again alleges that its:

> mission and purpose have been frustrated by Defendants' discriminatory practices….

and that

> Each act of discrimination conducted in the Metropolitan St. Louis area **causes a setback** to the good work accomplished by EHOC's educational, counseling, and outreach efforts and the development of an integrated housing community. **As a result** [of each act of discrimination] EHOC must launch further efforts to undo the damage that the discrimination has caused. These further efforts required are a substantial drain on EHOC's resources and cause harm to EHOC.

With respect to these types of "setback" and "frustration of purpose" allegations, the Supreme Court has made clear that frustration of the EHOC's purpose is nothing more than an abstract social goal, and not a concrete injury-in-fact required to confer standing to the EHOC in this matter. Likewise, "setback[s]" cause by "[e]ach act of discrimination conducted in the Metropolitan St. Louis area" are nothing more than abstract social goals.

For these reasons, the "setback" and "frustrated purpose" allegations cannot form the basis of EHOC's injury-in-fact, and therefore, based on these allegations, EHOC has failed to state a claim, and absent any other plausible injuries-in-fact, its First Amended Complaint should be dismissed.

## VII. The Costs of Investigating Defendants Can Not be Fairly Traced to Defendants' Allegedly Unlawful Conduct In Order to Satisfy Article III's Requirement of Causation of an Injury-in-Fact Because They Were the Result of Self Imposed Budgetary Choices

"Art. III judicial power...can be invoked **only when** the plaintiff himself has suffered some threatened or actual injury **resulting from** the putatively illegal action. *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (emphasis added, internal quotations and citations omitted). In other words, for Article III standing to exist, the injury alleged by the plaintiff must be caused by the allegedly unlawful conduct. The causation element of Article III standing is known as "traceability." "Traceability requires proof of causation, showing the injury **resulted from the actions of the defendant**[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added).

As the foregoing makes clear, EHOC must make a plausible case at the pleadings stage that the **allegedly wrongful conduct** of Defendants **caused** EHOC to suffer damages. In other words, any damages of EHOC must occur **after** the allegedly unlawful conduct. With respect to EHOC's costs of testing Defendants, such costs cannot form the basis of EHOC's damages for standing purposes. As alleged by EHOC, part of its mission is to periodically conduct investigations of housing providers. Therefore, in carrying out part of its mission, EHOC made a decision to conduct investigations of Defendants. Any "diverted resources" of EHOC with respect to the testing itself was the result of self imposed budgetary choices. Because the FHA only allows aggrieved parties to recover damages caused by discriminatory conduct, EHOC would be unable to maintain an action to recover testing costs where **no** discriminatory conduct was revealed.

Here, EHOC cannot plausible prove that the first periodic test it performed established discrimination, meaning that the costs expended on the subsequent tests were, again, self-imposed budgetary choices. Specifically, on September 4, 2013, EHOC, in its Memorandum in Opposition to Defendants' Motion to Set Aside Clerk's Entry of Default, set forth allegations of discrimination by Defendants gleaned from the three tests at issue in this case. *Doc. 23.* EHOC also attached exhibits to its Opposition. *See e.g., Docs. 23-1 – 23-4.* These documents are central to the allegations of discrimination in this matter because they were presented to the Court when EHOC alleged that Defendants failed to establish a meritorious defense for purposes of FED. R. CIV. P. 55(c), Defendants would request that the Court consider these documents not as extrinsic materials outside of the pleadings, but documents that are undisputed and otherwise integral to EHOC's claim that may be considered in conjunction with a FED. R. CIV. P. 12(b)(c) motion to dismiss.[1]

Specifically, EHOC alleged that:

> **[T]he applicable policy** [of the St. Louis Housing Authority] establishes that "the family unit size does not dictate the size of unit the family must actually lease, nor does it determine who within a household will share a bedroom/sleeping room.

Doc. 23, citing St. Louis Hous. Auth. Admin. Plan. ¶ 16.2.

The Administrative Plan attached to EHOC's Memorandum in Opposition to Defendants' Motion to Set Aside Clerk's Entry of Default Exhibit D states that:

---

[1] *See e.g., Baicker-McKee, et al., Federal Civil Rules Handbook*, pg. 459 (2013) ("In ruling on a Rule 12(b)(6) motion, the court focuses principally on the complaint itself, but often may also consider a small category of additional materials:…documents that…are otherwise integral to the claim (provided they are undisputed)….").

Alternatively, if the Court believes that this material is relevant to Defendants' Motion to Dismiss and that this material is "outside of the pleadings," Defendants request that its Motion to Dismiss be converted to a Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. *See e.g., BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687-88 (8th Cir. 2003).

- Persons of **different generations** (other than spouses) and unrelated adults should be allocated a separate bedroom….
- Separate bedrooms should be allocated for persons of the opposite sex (other than adults who have a spousal relationship and **children under the age of three**)….

Doc. 23-4, ¶ 16.2.

In other words, in its Memorandum in Opposition to Defendants' Motion to Set Aside Clerk's Entry of Default, EHOC alleged that:

- The St. Louis Housing Authority Administrative Plan attached as Exhibit D (Doc. 23-4) is the **applicable policy** with respect to the determination of whether discrimination based on familial status occurred; and
- The St. Louis Housing Authority Administrative Plan requires separate bedrooms for individuals residing in a home unless they are spousal adults or **children under the age of three.**

However, in an affidavit attached to EHOC's Memorandum in Opposition to Defendants' Motion to Set Aside Clerk's Entry of Default, an employee of EHOC, being duly sworn, stated that:

> The first familial status test (June 6-8, 2011) **involved two black female testers** who made phone calls to Norman Jezewak. The first tester called on June 6, 2011 and inquired about a one bedroom apartment for her and her husband. The second tester called on June 8, 2011 and inquired about a one-bedroom apartment for her **and her three-year-old daughter**. Neither of these testers visited the property.
> ***
> **The familial status tests** indicated that Norman Jezewak was willing to make one bedroom apartments available for inspection to two-person families without children but **was unwilling to make one-bedroom apartments available for inspection by two-person families with children.**

*Doc. 23-1* (emphasis added).

In sum, the "familial status" test conducted on June 6-8, 2011 involved two females of the *same* race, and allegedly revealed that Defendants were unwilling to make a one bedroom apartment available to a female and her purported three-year old

daughter, but that Defendants were willing to make available a one bedroom apartment for a husband and wife. Under the "applicable" St. Louis Housing Authority Administrative Plan, separate bedrooms must be made available to individuals unless they are spouses or children **under** the age of three.

As alleged by the EHOC, the first familial status test revealed evidence of discrimination based on both "familial status," as well as discrimination based on "race and/or color." **"Based on the results of this test**, EHOC's testing coordinator conducted a **second matched pair test for familial status discrimination** on September 20, 2011, and **a separate matched pair test for race discrimination** on July 7-12, 2011." As stated above, in order for the costs of the subsequent tests to be a necessary injury-in-fact, EHOC would have to establish that the first test revealed evidence of discrimination and that the subsequent tests were a result of this discrimination.

Because the purported child in the first familial status test was not "under the age of three," though, Defendants could not have discriminated against the tester based on familial status. Moreover, the first familial status test "involved two black female testers," and the affidavit of the EHOC employee mentioned nothing about allegations of racial discrimination during the first familial status test. It is not plausible, then, that the first familial status test revealed evidence that Defendants were discriminating on the basis of "race and/or color." Therefore, the costs of the subsequent tests (for familial status, again, and race) cannot plausibly be traced to the alleged discrimination found during the first test, because it is not plausible that any familial status or race discrimination took place.

For these reasons, the costs of the subsequent tests cannot form the basis of EHOC's injury-in-fact, and therefore, based on these allegations, EHOC has failed to state a claim, and absent any other plausible injuries-in-fact, its First Amended Complaint should be dismissed.

### VIII. EHOC Has Failed to State an Injury-in-Fact Based on Diverted Resources

In *Arkansas ACORN Fair Housing, Inc. v. Greystone Development*, 160 F.3d 433, 434-35 (8th Cir. 1998), the Eighth Circuit acknowledged that the deflection of a fair housing organization's monetary and human resources from counseling or educational programs to legal efforts aimed at combating discrimination, such as monitoring and investigation, can be sufficient to constitute an actual injury **where traceable to some act by the defendant**. However, as stated above, the tests conducted in this case were the result of periodic testing performed by the EHOC, and were not the result of an investigation by an outside complainant, or the result of a finding of discrimination – again, the first test failed to reveal any discrimination based on race or familial status.

Courts have addressed the issue of fair housing organizations "manufacturing" cases, and whether the costs associated with such manufacturing qualify as injuries-in-fact. As the Court stated in *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (1990), "[a]n organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit. Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation." "[A]n organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a "self-inflicted" budgetary choice that cannot qualify as an injury in fact for purposes of standing." Am. Soc. for Prevention of Cruelty v. Feld, 659

F. 3d 13, 18 (D.C. Cir. 2011) (citing *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011)).

To the extent the EHOC attempts to claim that it has been required to divert resources from other parts of the organization to combat discrimination traceable to Defendants, **no concrete allegations** have been presented. Rather, EHOC has alleged that:

- "…**EHOC must launch further efforts to undo the damage that the discrimination has caused. These further efforts required are a substantial drain on EHOC's resources and cause harm to EHOC**." Plaintiff's First Amended Complaint, ¶ 15 (emphasis added).
- "As a result of the conduct of the Defendants, persons were injured in their person and property. **Specifically, families with children and persons of minority races and color were not provided equal housing opportunity in violation of the Fair Housing Act.** Further, EHOC is **now forced to divert funds** to counteract the discriminatory message and acts of Defendants and has had its purpose frustrated by Defendants' discriminatory conduct." Plaintiff's First Amended Complaint, ¶ 16 (emphasis added).

Although the allegations include the term "specifically," EHOC's allegations are far from specific. EHOC alleges that it "must launch further efforts to undo the damage" that Defendants' discrimination has allegedly caused, and that "families with children and persons of minority races and color were not provided equal housing opportunity in violation of the fair housing act" yet, it fails to indicate:

(1) who specifically was not provided housing (because it is not disputed that the testers never had any intent to rent from Defendants);
(2) what the allegedly diverted resources were used for;
(3) what the allegedly diverted resources were diverted from;
(4) what "further efforts" were required by EHOC;
(5) whether these "further efforts" ever were, in fact, launched (EHOC's allegations state that they "must now" launch further efforts, despite the fact that the first alleged discriminatory act occurred more than 3 years ago);
(6) how much these "further efforts" cost EHOC if, in fact, they were ever launched; or
(7) how these "further efforts" were necessary to undo the damage the alleged discrimination by Defendants caused.

There are simply no allegations in the First Amended Complaint that the particular alleged discriminatory acts of Defendants required EHOC to expend additional (or any) resources to educate or counsel individuals about those particular acts of discrimination by Defendants.  To paraphrase the Supreme Court in *Havens*, EHOC has failed to show that the particular alleged acts of discrimination by Defendants have "perceptibly impaired [the EHOC's] ability to provide counseling and referral services for low- and moderate-income homeseekers[.]" *Havens*, 455 U. S. at 379.  In sum, EHOC has failed to alleged that it has been required to take some sort of action that it otherwise would not have were it not for the allegedly discriminatory acts of Defendants.  Unless and until the EHOC presents the Court with any such concrete, specific allegations, EHOC's First Amended Complaint fails as a matter of law, and dismissal is proper under FED. R. CIV. P. 12(b)(6).

For these reasons, the unidentified or non-existent "diverted funds" or "further efforts" alleged by EHOC are so non-specific that they simply fail to state an injury-in-fact, and therefore, based on these allegations, EHOC has failed to state a claim, and absent any other plausible injuries-in-fact, its First Amended Complaint should be dismissed.

Alternatively, Defendants request that the Court enter an order directing Defendants to make more definite and certain the allegations with respect to the "diverted funds" and "further efforts" such that they contain more than mere "labels and conclusions," "naked assertion[s]" devoid of "further factual enhancement," or an "unadorned, the-defendant-unlawfully-harmed-me accusation."  See e.g., *Twombly*, 550 U.S. at 555, 557 and *Iqbal*, 556 U.S. at 678.

## IX. Conclusion

For the foregoing reasons, Defendants request that EHOC's First Amended Complaint be dismissed pursuant to F__ED__. R. C__IV__. P. 12(b)(6) because it has failed to sufficiently plead allegations sufficient to confer Article III standing or plead allegations from which plausible inferences of allegations sufficient to confer Article III standing could be gleaned. Alternatively, Defendants request that if this Court believes that EHOC's allegations plausibly set forth an injury-in-fact, that it grant Defendants' Motion for More Definite Statement pursuant to F__ED__. R. C__IV__. P. 12(e) given that, as pled, the allegations in the First Amended Complaint are so vague and ambiguous – especially with respect to the "diversion of funds" and "further efforts" allegations – that Defendants cannot reasonably prepare a response to them.

Respectfully submitted,

THE GOGEL LAW FIRM

*/s/ Jeremy A. Gogel*

Jeremy A. Gogel, #61866MO
4542 West Pine Boulevard
Saint Louis, MO 63108
Phone: (314) 775-3864
Fax: (314) 531-1069
E-mail: jeremy@gogellawfirm.com

**Counsel for Defendants Norman L. Jezewak and Signature Property, LLC.**

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing document was sent via the Court's electronic notification system and via email this 15th of August, 2014, to the following counsel of record:

Zachary M. Schmook
1027 S. Vandeventer Avenue
Sixth Floor
St. Louis, MO 63110
Phone: (314) 246-9381
Fax: (888) 636-4412
Email: zschmook@ehoc-stl.org

**Attorney for Metropolitan St. Louis Equal Housing & Opportunity Council**

                                                */s/ Jeremy A. Gogel*