UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN ST. LOUIS EQUAL HOUSING &OPPORTUNITY COUNCIL, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 4:13CV481 HEA |
| NORMAN L. JEZEWAK, and SIGNATURE PROPERTY, L.L.C. ) ) ) | |
| Defendants, ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss, or Alternatively, Motion for More Definite Statement, [Doc. No. 33]. Plaintiff opposes the motion. For the reasons set forth below, the Motion is denied.

### Facts and Background[1]

Plaintiff's original Complaint was dismissed as a result of the Court's order granting Defendants' Motion to Dismiss. Plaintiff was given leave to file an Amended Complaint. Plaintiff filed its Amended Complaint alleging the following:

---

[1] The recitation of facts is taken from Plaintiff's First Amended Complaint and is taken as true for the purposes of this motion. Such recitation in no way relieves any party from the necessary proof thereof in later proceedings.

1

Plaintiff's mission is to ensure equal opportunity for all persons in housing and places of public accommodation through education, counseling, investigation and enforcement.  Plaintiff executes this mission by: conducting training presentations throughout the region on fair housing, landlord-tenant law, and mortgage assistance; counseling and assisting individual clients with discrimination complaints, eviction defenses, and mortgage issues; working with local communities, state and municipal governments, and other organizations to encourage equal opportunity and affirmatively further fair housing; investigating housing providers and other entities covered by the Fair Housing Act and similar laws to ensure their compliance; and taking other actions consistent with its mission of ending discrimination and places of public accommodation.

Testing is a tool used by fair housing agencies to measure the quality, quantity, and content of information and customer service given to potential renters and/or home buyers by housing providers based on protected class. A matched pair test is an investigation using testers to compare the treatment afforded by housing providers to different types of prospective renters. Testers are persons who, without the intent to rent an apartment or buy a house, pose as prospective buyers or renters of real estate for the purpose of gathering information. In matched pair tests, two similarly-situated testers – one of whom is a member of a protected class and the other of whom is not – test the same property. The information gathered by

the tester is then assessed to determine whether there is any indication that a housing provider may be in violation of fair housing laws.

Plaintiff conducted a matched pair test for familial status discrimination at 5847 Sunshine Drive on June 6-8, 2011. Plaintiff's testing coordinator determined that the results of the June 6-8, 2011 matched pair test indicated that Defendants may be discriminating on the basis of familial status, as well as race and/or color. Based on the results of this test, EHOC's testing coordinator conducted a second matched pair test for familial status discrimination on September 20, 2011, and a separate matched pair test for race discrimination on July 7-12, 2011.

The two tests for familial status discrimination revealed evidence that Defendants engaged in discriminatory practices including, but not limited to, the following: a. Refusing to make one-bedroom units available for inspection by two-person households with children while indicating a willingness to make the same units available for inspection by two-person households without children; b. Informing testers who indicated that they had children that he would not rent to them because of the underwriting policy of the Defendants' insurance provider; and c. Informing testers who indicated that they had children that each resident needed to have his or her own room because of the underwriting policy of the Defendants' insurance provider.

The matched pair test for racial discrimination revealed evidence that Defendants engaged in discriminatory practices including, but not limited to, the following: questioning the African-American tester extensively about his credit score while not similarly questioning the white tester; questioning the African-American tester more extensively about his current neighborhood than he did the white tester; and stating that less-desirable kinds of people tend to live in the African-American tester's current neighborhood.

Each act of discrimination conducted in the Metropolitan St. Louis area causes a setback to the good work accomplished by Plaintiff's educational, counseling, and outreach efforts and the development of an integrated housing community. As a result, Plaintiff must launch further efforts to undo the damage that the discrimination has caused. These further efforts required are a substantial drain on Plaintiff's resources and cause harm to Plaintiff.

Plaintiff alleges that as a result of the conduct of the Defendants, persons were injured in their person and property. Specifically, families with children and persons of minority races and color were not provided equal housing opportunity in violation of the Fair Housing Act. Further, Plaintiff is now forced to divert funds to counteract the discriminatory message and acts of Defendants and has had its purpose frustrated by Defendants' discriminatory conduct.

Plaintiff claims that its mission and purpose have been frustrated by Defendants' discriminatory practices. As a result of the time spent by Plaintiff conducting the initial and follow-up tests on Defendants property, Plaintiff's time and resources were diverted from its fair housing counseling, training, outreach, and other activities and services.

Plaintiff claims that Defendants' actions constitute housing discrimination in violation of 42 U.S.C. § 3601, *et seq*.

**Standard**

A defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead facts from which the court can draw a "reasonable inference" of liability. *Iqbal*, 556 U.S. at 678. The complaint need not contain "detailed factual allegations" but must contain more than mere "labels and conclusions, and a formulaic recitation of the elements" or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations," *id*. at 679, which "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss, the court can "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Turning to any "well-pleaded factual allegations," the court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. The court may only consider the initial pleadings. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 799 (8th Cir.2011).

Rule 12(e) of the Federal Rules of Civil Procedure provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e). A motion for more definite statement is proper when a party is unable to determine the issues that must be met, or where there is a major ambiguity or omission in the complaint that renders it unanswerable. *Tinder v. Lewis Cnty. Nursing Home Dist., et al.,* 207 F.Supp.2d 951, 959 (E.D.Mo.2001). However, because of the availability of extensive discovery and liberal notice pleading, motions for a more definite statement are generally denied. *Id.* Further,

"motions for more definite statement are designed to strike unintelligibility rather than lack of detail in the complaint." *Id.* at 960. A motion for more definite statement is not to be used to test an opponent's case by requiring him to allege specific facts or back down from his allegations, nor is it to be used as a substitute for discovery in trial preparation. *Id.*

## Discussion

Defendants move to dismiss for lack of standing. Defendants again contend that Plaintiff lacks Article III standing, which requires a plaintiff to have suffered an injury-in-fact "that has a causal connection with the challenged [ ] action that likely will be redressed by a favorable decision." *Missouri Coalition for Environment v. F.E.R..*, 544 F.3d 955, 957 (8th Cir. 2008), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

The Complaint alleges that its "mission is to ensure equal access to housing for all people through education, counseling, investigation, and enforcement," that it "periodically conducts investigations of housing providers in the City of St. Louis to ensure that they are complying with the Fair Housing Act.

The Supreme Court has stated that "more than simply a setback to the organization's abstract social interests" is required for establishing an injury-in-fact. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

In *Arkansas ACORN Fair Housing, Inc. v. Greystone Development*, 160 F.3d 433, 434-35 (8th Cir. 1998), the Eighth Circuit acknowledged that the deflection of a fair housing organization's monetary and human resources from counseling or educational programs to legal efforts aimed at combating discrimination, such as monitoring and investigation, can be sufficient to constitute an actual injury where traceable to some act by the defendant. Plaintiff has alleged that the initial test results indicated that Defendants may be engaging in discrimination. Indicative of this are the questions set out that were asked of the African American tester and not the non-African American tester, as well as advising the tester inquiring about renting with a child that a separate bedroom was necessary.

Plaintiff diverted resources for additional testing which would not have been diverted but for the alleged discrimination discovered by the testers. Thus, Plaintiff has cured the previous shortfalls of the original complaint by setting out the facts upon which the further testing was required.

Although Defendant seeks more, *i.e.*, the allegation that Defendant *was* engaged in discriminatory practices, at this stage of the litigation such allegations go to the merits of the case and are not required under the Federal Rules. The plausibility standard of *Twombly* and Iqbal are not so rigid as to preclude Plaintiff from making these types of allegations to state its claim.

Plaintiff's Amended Complaint is not so vague or ambiguous that Defendants cannot ascertain the allegations against them and the basis upon which these allegations rest. Defendants ask the Court to test Plaintiff's case by seeking more specific facts, a request that runs contrary to the spirit and letter of Rule 12(e). The motion for more definite statement will be denied.

## Conclusion

Based on the foregoing, the Court denies Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 33], is **DENIED**.

Dated this 18th day of March, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE