UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN ST. LOUIS EQUAL HOUSING &OPPORTUNITY COUNCIL, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 4:13CV481 HEA<br>) |
| NORMAN L. JEZEWAK, and<br>SIGNATURE PROPERTY, L.L.C. | )<br>)<br>) |
| Defendants, | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment, [Doc. No. 46]. Plaintiff opposes the motion. For the reasons set forth below, the Motion is granted in part and denied in part.

## **Facts and Background**

Plaintiff filed this action alleging the following facts:

Plaintiff's mission is to ensure equal opportunity for all persons in housing and places of public accommodation through education, counseling, investigation and enforcement. Plaintiff executes this mission by: a. Conducting training presentations throughout the region on fair housing, landlord-tenant law, and mortgage assistance; b. counseling and assisting individual clients with discrimination complaints, eviction defenses, and mortgage issues; c. working with

local communities, state and municipal governments, and other organizations to encourage equal opportunity and affirmatively further fair housing; d. investigating housing providers and other entities covered by the Fair Housing Act and similar laws to ensure their compliance; and e. taking other actions consistent with its mission of ending discrimination and places of public accommodation.

Testing is a tool used by fair housing agencies to measure the quality, quantity, and content of information and customer service given to potential renters and/or home buyers by housing providers based on protected class. A matched pair test is an investigation using testers to compare the treatment afforded by housing providers to different types of prospective renters. Testers are persons who, without the intent to rent an apartment or buy a house, pose as prospective buyers or renters of real estate for the purpose of gathering information. In matched pair tests, two similarly-situated testers – one of whom is a member of a protected class and the other of whom is not – test the same property. The information gathered by the tester is then assessed to determine whether there is any indication that a housing provider may be in violation of fair housing laws.

Plaintiff conducted a matched pair test for familial status discrimination at 5847 Sunshine Drive on June 6-8, 2011. EHOC's testing coordinator determined that the results of the June 6-8, 2011 matched pair test indicated that Defendants may be discriminating on the basis of familial status, as well as race and/or color.

Based on the results of this test, EHOC's testing coordinator conducted a second matched pair test for familial status discrimination on September 20, 2011, and a separate matched pair test for race discrimination on July 7-12, 2011. The two tests for familial status discrimination revealed evidence that Defendants engaged in discriminatory practices including, but not limited to, the following: a. refusing to make one-bedroom units available for inspection by two-person households with children while indicating a willingness to make the same units available for inspection by two-person households without children; b. informing testers who indicated that they had children that he would not rent to them because of the underwriting policy of the Defendants' insurance provider; and c. informing testers who indicated that they had children that each resident needed to have his or her own room because of the underwriting policy of the Defendants' insurance provider.

The matched pair test for racial discrimination revealed evidence that Defendants engaged in discriminatory practices including, but not limited to, the following: a. questioning the African-American tester extensively about his credit score while not similarly questioning the white tester; b. questioning the African-American tester more extensively about his current neighborhood than he did the white tester; and stating that less-desirable kinds of people tend to live in the African-American tester's current neighborhood.

Plaintiff contends that as a result of the conduct of the Defendants, persons were injured in their person and property. Specifically, families with children and persons of minority races and color were not provided equal housing opportunity in violation of the Fair Housing Act. Further, Plaintiff claims it is now forced to divert funds to counteract the discriminatory message and acts of Defendants and has had its purpose frustrated by Defendants' discriminatory conduct.

Based on these factual allegations, Plaintiff claims Defendant violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* Defendants now move for summary judgment.

The uncontroverted material facts establish the following:

EHOC's mission is to ensure equal access to housing for all people through education, counseling, investigation, and enforcement. EHOC investigates housing providers and other entities covered by the Fair Housing Act and similar laws to ensure their compliance. One of the ways that EHOC investigates entities covered by the Fair Housing Act is by using testing. Testing is a tool used by fair housing agencies to measure the quality, quantity, and content of information and customer service given to potential renters and/or home buyers by housing providers based on protected class.

A matched pair test is an investigation using testers to compare the treatment afforded by housing providers to different types of prospective renters. Testers are

persons who, without the intent to rent an apartment or buy a house, pose as prospective buyers or renters of real estate for the purpose of gathering information. In matched pair tests, two similarly-situated testers – one of whom is a member of a protected class and the other of whom is not – test the same property. The information gathered by the tester is then assessed to determine whether there is any indication that a housing provider may be in violation of fair housing laws.

Between 2008 and 2015, EHOC received more than $1,978,473.00 from the U.S. Department of Housing and Urban Development's ("HUD") Fair Housing Initiatives Program ("FHIP").  FHIP provides funding to fair housing organizations and other non-profits that assist individuals who believe that they have been victims of housing discrimination. FHIP provides funds to eligible organizations through competitive grants under three initiatives to carry out enforcement activities to prevent or eliminate discriminatory housing practices and inform individuals of their rights and responsibilities under the Fair Housing Act. The Initiatives are: the Fair Housing Organization Initiative, Private Enforcement Initiative and the Education and Outreach Initiative.

The Private Enforcement Initiative ("PEI") provides funding to private, non-profit fair housing enforcement organizations for the investigation and enforcement of alleged violations of the Fair Housing Act.

Payments under FHIP are contingent on the satisfactory and timely completion of project activities as reflected in the grant or cooperative agreement. Requests for funds from HUD must be accompanied by financial and progress reports.

Pursuant to its agreement with HUD, EHOC indicated that it would investigate at least 20 complaints per year using matched pair testing, including site tests. In addition to complaint-based testing, EHOC would conduct at least 60 additional site rental, sales, lending and accessible design enforcement audits to ensure that the housing market remained open to people of all protected classes.

EHOC stated that the program tasks to be performed during 2011 included, among other things, conducting 110 tests per year – which included 60 site tests, 20 matched pair tests, 25 telephone tests, and 10 internet tests. Exhibit 5, Program Tasks, pg. 2 of #EHOC000476-78.

In 2011, Katina Combs' was a Fair Housing Specialist with EHOC. EHOC stated that Ms. Combs' duties as a Fair Housing Specialist were to ensure that all enforcement activities were conducted properly. EHOC stated that Ms. Combs' spends 40 hours per week or 2080 hours per year on the FHIP, Private Enforcement Initiative enforcement grant. Ms. Combs was in charge of overseeing the testing done on Defendants at issue in this case.

EHOC bases its Complaint on the conduction of three matched pair tests of Defendants during 2011. "EHOC conducted a matched pair test for familial status discrimination at 5847 Sunshine Drive on June 6-8, 2011." The test performed on June 6, 2011 was performed by Shirley Jackson, an African American female who, in her role as a tester, indicated to Defendants that she was married, and was looking for a one bedroom apartment for herself and her husband. Shirley Jackson only spoke with Norman Jezewak on the phone, not in person. Shirley Jackson did not tell Defendants her race.

The test performed on June 8, 2011 was performed by Tiaa Harris, an African American female named, who, in her role as a tester, indicated to Defendants that she was single, and was looking for a one bedroom apartment for herself and her three year old daughter. Tiaa Harris only spoke with Norman Jezewak on the phone, not in person. Tiaa Harris did not tell Defendants her race.

On June 12, 2011, EHOC determined that the first matched pair tests revealed evidence of familial status ("FS") discrimination.

A second matched pair test of Defendants for evaluating potential racial discrimination took place on July 7-13, 2011. The racial discrimination test involved two male testers, one African American, and one white. The African American tester's name was Don Cartier. Don Cartier was not paid for testing Defendants. Don Cartier was involved in testing as part of an internship or

volunteer commitment to EHOC. The white tester's name was Justin Atkins. Justin Atkins was not paid for testing Defendants. Justin Atkins was involved in testing as part of an internship or volunteer commitment to EHOC.

On EHOC's rental test summary for the matched pair test for racial discrimination, the difference between the conversations with Don Cartier and Defendants and Justin Atkins and Defendants was that Defendants allegedly asked Don Cartier about his credit history, but did not ask Justin Atkins about his credit history.

A third matched pair test of Defendants for evaluating potential familial status discrimination took place on September 20, 2011. The second familial status discrimination test involved two female testers, one who purportedly was single and had a 4 year old child, and the second who purported was living with an adult boyfriend. The tester with the child was named Laura Bradarich. Laura Bradarich purportedly told Defendants that she had a four year old child, and was interested in a 1 bedroom apartment, but "would be willing to look at a 2-bedroom." Laura Bradarich was not paid for testing Defendants. Laura Bradarich was involved in testing as part of an internship or volunteer commitment to EHOC.

The tester without a child was named Brittany Voth. Brittany Voth was not paid for testing Defendants. Brittany Voth was involved in testing as part of an internship or volunteer commitment to EHOC.

During the first quarter of the 2011 FHIP grant year, EHOC conducted 12 tests. During the second quarter of the 2011 FHIP grant year, EHOC conducted 33 tests. During the third quarter of the 2011 FHIP grant year, EHOC conducted 17 tests. During the fourth quarter of the 2011 FHIP grant year, EHOC conducted 21 tests. During the 2011 FHIP grant year, EHOC only conducted 83 tests out of the 110 tests that it stated it would complete during the 2011 FHIP grant year.

Plaintiff's Amended Complaint alleges that "as a result of the conduct of the Defendants, persons were injured in their person and property. Specifically, families with children and persons of minority races and color were not provided equal housing opportunity in violation of the Fair Housing Act. Further, EHOC is now forced to divert funds to counteract the discriminatory message and acts of Defendants and has had its purpose frustrated by Defendants' discriminatory conduct." EHOC has failed to identify the families with children and persons of minority races and color were not provided equal housing opportunity in violation of the Fair Housing Act. EHOC has failed to identify any funds that were diverted to counteract the alleged discriminatory message and acts of Defendants. However, Plaintiff has devoted over 100 hours of its employee's time to investigating Defendant

In its third quarter progress report to the U.S. Department of Housing and Urban Development for 2011 due October 5, 2011, EHOC did not note any

problems encountered that impede, or threaten to impede, the performance of services under the terms of its grant agreement with the U.S. Department of Housing and Urban Development's Fair Housing Initiatives Program.

## **Standard of Review**

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.,* 445 F.3d 1106, 1109 (8th Cir.2006) (quoting *Bockelman v. MCI Worldcom, Inc.,* 403 F.3d 528, 531 (8th Cir.2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.
In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting

Fed.R.Civ.P. 56(e)). A "genuine" dispute of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249–50 (citations omitted).

## Discussion

The Fair Housing Act provides that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of ... rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color ... or national origin." 42 U.S.C. § 3604(b). An "aggrieved person" may bring a civil action "to obtain appropriate relief with respect to such discriminatory housing practice or breach." 42 U.S.C. § 3613(a)(1)(A). An " '[a]ggrieved person' " includes any person who—(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(I). Defendants challenge Plaintiff's standing to bring this action as an "aggrieved person."

In *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372 (1982), the Supreme Court essentially dispensed with prudential limitations on standing in the context of an action under the Fair Housing Act, and required only "Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered a 'distinct and palpable injury [.]'" *Id.,* quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975). The injuries must be "fairly traceable" to Defendant's actions. *Id.* at 376.

The Supreme Court also recognized that an *organization* may have standing to pursue an action under the Fair Housing Act. "In determining whether [an organization] has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual: Has the plaintiff "'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction"?" *Havens Realty,* 455 U.S. at 378–79, quoting *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 261 (1977). If a defendant's actions in violation of the Fair Housing Act "perceptibly impaired" the plaintiff organization's ability to provide counseling and referral services for its clients, "there can be no question that the organization has suffered injury in fact." *Id.* at 379. "Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests." *Id.* "Of course,

[the organization] will have to demonstrate at trial that it has indeed suffered impairment in its role of facilitating open housing before it will be entitled to judicial relief." *Id.,* n. 21.

The Eighth Circuit addressed the issue of an organization's standing to sue under the Fair Housing Act in *Arkansas Acorn Fair Housing, Inc. v. Greystone Development, Ltd. Co.,* 160 F.3d 433 (1998). "[T]he sole requirement for an organization ... to have standing to sue in its own right under the FHA is injury in fact." *Id.* at 434, citing *Havens Realty,* 455 U.S. at 372. A fair housing organization satisfies the requirement of showing injury in fact if it "'devote[s] significant resources to identify and counteract' a defendant's unlawful practices." *Id.,* quoting *Havens Realty,* 455 U.S. at 379. "At the summary judgment stage, '[t]he party invoking federal jurisdiction bears the burden of establishing' injury in fact by alleging specific facts that taken as true demonstrate the plaintiff suffered 'distinct and palpable injuries that are 'fairly traceable" to the defendant's actions." *Id.,* citing *Havens Realty,* 455 U.S. at 376, quoting *Village of Arlington Heights,* 429 U.S. at 261.

In *Arkansas Acorn Fair Housing,* as here, the plaintiff claimed that its efforts to promote fair housing were impaired because its staff devoted time to the monitoring and investigation of the defendant's conduct, which the plaintiff alleged was in violation of the Fair Housing Act. The plaintiff claimed that such time and

13

resources should have been devoted to educational activities and other programs that were "thwarted" by the defendant's conduct. At the summary judgment stage, however, the plaintiff presented "no facts to quantify the resources, if any, that were expended to counteract the effects of a single, allegedly discriminatory [act]." *Id.* at 434. "While the deflection of an organization's monetary and human resources from counseling or educational programs to legal efforts aimed at combating discrimination, such as monitoring and investigation, is itself sufficient to constitute an actual injury, ... the injury must also be traceable to some act of the defendant." *Id.* at 434–35. "Absent specific facts establishing distinct and palpable injuries *fairly traceable* to [defendant's actions, plaintiff] cannot satisfy its burden at the summary judgment stage to establish the injury in fact requirement for standing under the FHA." *Id.* at 435 (emphasis in original).

Plaintiff has not demonstrated any damages fairly traceable to Defendants' actions with respect to the first familial status test nor the racial discrimination test. Plaintiffs initiated the first test; Defendant took no action with regard to any alleged divergence of funds for investigations of Defendants' practices. In other words, Plaintiff initiated the contact with Defendants for the first matched pair test; there is no evidence that Plaintiff was acting in response to complaints, advertisements or any other actions by Defendant indicative of familial status discrimination. The resulting alleged discrimination and any damages arising

14

therefrom are not "fairly traceable" to any acts of Defendants. Moreover, there is no evidence whatsoever Defendants denied any persons housing based on familial status discrimination. As such, Plaintiff cannot establish it has Article III standing to pursue this claim. Defendants are entitled to judgment as a matter of law on this claim.

With respect to the second matched pair test, Plaintiff likewise has produced no evidence of damages "fairly traceable" to Defendants' actions. Plaintiff claims that the initial familial status test revealed evidence of racial discrimination, however, Plaintiff's position is without merit. Initially, it is pure speculation that the testers' race could be ascertained because both testers telephoned Defendant Jezewak. Assuming Defendant Jezewak could ascertain the testers' race from the telephone conversation is pure speculation. Actual knowledge of the testers' race cannot be assumed or surmised based on the telephone conversation. Secondly, because both testers are African American, this test cannot support further testing for a racial discrimination claim. Indeed, Plaintiff argues that only one of the African American women experienced discrimination, not both. The test could just as easily have established the *lack* of racial discrimination by Defendants. Because there was no evidence of discrimination leading to the subsequent matched pair test, Plaintiff cannot establish any damages that are fairly traceable to

Defendants' actions. Defendants are entitled to judgment as a matter of law on the second matched pair test of July 7-13, 2011.

The third matched pair test, however, can give rise to a claim against Defendants. While Defendants argue that Katina Combs' specifically detailed time does not give rise to evidence of damages because she was, in essence, doing her job under the grant Plaintiff received, Defendants overlook the salient fact that Ms. Combs could have been doing something else with her time but for the alleged discrimination by Defendants. Whether and to what extent Defendants' actions rise to the level of discrimination remains to be determined. The issue of standing as to the third match pair test has been established through the specifically detailed time records of Ms. Combs and evidence of the amount she is paid. Defendants are not entitled to judgment as a matter of law with respect to the claim of familial status discrimination based on the matched pair test conducted on September 20, 2011.

## CONCLUSION

Plaintiff lacks standing to bring this action under th**e Fair Housing Act with respect to its first and second claims of** discrimination, but has sufficiently established it has standing with regard to the third matched pair testing of Defendant. The claims presented in the Amended Complaint will be dismissed on those two claims, with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [Doc. No. 46] is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the First and Second matched pair claims in the Amended Complaint based on alleged violations of the federal Fair Housing Act, are dismissed, with prejudice.

A separate Judgment will be entered upon the resolution of the remaining claim.

Dated this 5th day of May, 2016.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTICT JUDGE